UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AARON STEWART (A-71724), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-cv-08805 |
| | ) | Judge Marvin E. Aspen |
| SALEH OBAISI and RANDY PFISTER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

MARVIN E. ASPEN, District Judge:

This is a deliberate indifference prisoner civil rights lawsuit. Plaintiff, Aaron Stewart, alleges that his hepatitis C was untreated due to Medical Director Saleh Obaisi's[1] and Warden Randy Pfister's deliberate indifference. Defendants are sued in their individual capacities.[2] Before us are Defendants' motions to dismiss the Third Amended Complaint[3]. (Dkt. Nos. 96 and 98.) For the following reasons, Obaisi's motion is denied and Pfister's motion is granted.

**BACKGROUND**

The following facts are culled from the Third Amended Complaint and taken as true for the purposes of these motions. *See* Fed. R. Civ. P. 12(b).

Plaintiff has been incarcerated within the Illinois Department of Corrections ("IDOC")

---

[1] Defendant Saleh Obaisi deceased and was substituted by Independent Executor Ghaliah Obaisi following his passing. (Dkt. No. 42.)

[2] The official capacity claims are dismissed pursuant to a stipulation of dismissal. (Dkt. No. 104.)

[3] Plaintiff stylized his most recent complaint as the "Amended Complaint." (Dkt. No. 95.) But he filed two pervious complaints. (Dkt. No. 1, 17.) We refer to the most recent complaint herein as the "Third Amended Complaint."

1

since 2003. (Third Amended Complaint ("Amend. Compl.") (Dkt. No. 95) ¶ 4.) For some time during his IDOC incarceration, Plaintiff was incarcerated at Stateville Correctional Facility. Defendant Obaisi was Stateville's medical director. (*Id.*) As medical director, Obaisi was charged with overseeing all medical staff personnel at Stateville. (*Id.*) He also participated in the promulgation, interpretation, and application of all IDOC Policies and Protocols relating to providing medical care to Illinois prisoners, including Plaintiff's medical treatment and care. (*Id.*) Defendant Pfister was Stateville's warden. (*Id.* ¶ 6.) As warden, Pfister oversaw Stateville's employees and had authority for the establishment and implementation of all policies and procedures. (*Id.*)

Plaintiff suffers from hepatitis C, a potentially fatal blood-borne disease. (*Id.* ¶ 7.) Plaintiff tested positive for the hepatitis C virus in 2005 at the Menard Correctional Center and in 2010 at Stateville. (*Id.* ¶ 11.) The Center for Disease Prevention and Control ("CDC") recommends ongoing treatment and monitoring for patients diagnosed with hepatitis C. (*Id.* ¶ 8.) The hepatitis C infection becomes chronic and slowly damages the liver over many years in most cases. (*Id.*) Plaintiff also suffers from pulmonary fibrosis (scarring of lung tissue) and acute pancreatitis (inflammation of the pancreas). (*Id.*)

Around December 2013, Plaintiff asked for his fibrosis levels be tested to determine the severity of his hepatitis C. (*Id.* ¶ 13.) On or around December 2, 2013, Obaisi denied Plaintiff's request, reasoning that Plaintiff had no hepatitis viral load and therefore was not eligible for such testing. (*Id.*) Obaisi then discharged Plaintiff from Stateville's hepatitis clinic. (*Id.*) About three years later, in April 2016, Plaintiff was seen by Dr. Matija, who diagnosed him with hepatitis C. (*Id.* ¶ 15.) Dr. Matija also diagnosed Plaintiff with pancreatitis. (*Id.*) Following Dr. Matija's diagnosis, in October 2016, Obaisi again denied Plaintiff treatment for his hepatitis C because it

2

was "controlled" and did not require treatment. (*Id.* ¶ 16.)

From 2016 through 2017, Stewart submitted numerous written grievances and complaints. (*Id.* ¶¶ 17, 23.) Stewart's grievances and complaints grieved about the ineffective hepatitis treatment that he was receiving and his worsening symptoms. (*Id.*) Pfister denied those grievances based on Obaisi's 2013 discharge and the 2016 diagnosis, even though neither of those records contained any reference to lab reports testing Stewart's viral load or antibody count at the time. (*Id.* ¶ 18.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

## ANALYSIS

The Eighth Amendment imposes a duty on prison officials like Defendant Medical Director Obaisi and Warden Pfister to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). That includes ensuring that inmates receive adequate medical care. *Id.* Prison officials violate this duty when they act deliberately indifferent to the serious medical needs of an inmate. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 834). To succeed on a claim of deliberate indifference, a plaintiff must demonstrate that his medical condition is "objectively, sufficiently serious" and that the defendant acted with a "sufficiently culpable state of mind." *Id.* Additionally, liability under § 1983 requires a defendant's direct and personal involvement in the situation that causes injury to an inmate. *See, e.g.*, *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."); *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005 ("to be liable under Section 1983, the individual defendant must have caused or participated in a constitutional deprivation.").

A prison official cannot be liable for deliberate indifference unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. Thus, at the motion to dismiss stage, the plaintiff must allege a direct causal or affirmative connection between the named official and the alleged misconduct. *See id.*; *Arnett v. Webster,* 658 F.3d 742, 759 (7th Cir. 2011); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

Defendants Obaisi and Pfister file two separate motions to dismiss. We address each

4

motion in the order that their motions were filed.

## I. Defendant Pfister's Motion to Dismiss (Dkt. No. 96)

Pfister's motion seeks dismissal for failure to plausibly allege both that Pfister was personally involved in Plaintiff's medical treatment and acted with deliberate indifference to Plaintiff's health needs. We address these two points in turn.

### A. Pfister's Alleged Personal Involvement

Plaintiff's allegations of Pfister's personal involvement is that he was the prison's warden and so he was broadly responsible for Stewart's custody and care, oversaw all the prison's employees, and had authority over the prison's policies and protocols for providing medical care. (Amend. Compl. ¶¶ 6, 17 – 18, 23). Plaintiff also alleges Pfister's personal involvement for having denied Plaintiff's grievances. (*Id.*) The facts that Pfister was the warden at Stateville and therefore had supervisory responsibilities concerning inmate well-being does not, as a matter of fact or law, make him personally involved in Plaintiff's medical treatment. Indeed, to the extent those facts attempt to plead a claim for supervisory liability or *respondeat superior*, § 1983 does not permit such a theory of relief. *Pacelli v. DeVito*, 972 F.2d 871, 878 (7th Cir. 1992).

To the extent, however, that Plaintiff's lawsuit relies on allegations that Pfister improperly denied Plaintiff's grievances, the Seventh Circuit has held that allegations that a defendant was merely personally involved by way of administrative grievance denials is not enough, alone, to show personal involvement. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). The "alleged mishandling of grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Id.* (internal citations omitted); *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (denying or mishandling a grievance, alone, does not give rise to a constitutional violation).

Plaintiff alleges that Pfister's basis for denying Plaintiff's grievances were the existence of Plaintiff's 2013 discharge and 2016 diagnosis. (Amend. Compl. ¶¶ 17—18.)  A review of the pleading suggests that this theory rises and falls with Obaisi's conduct, not Pfister's, because Pfister's role was to confirm that medical staff responded to Plaintiff's requests for medical treatment.  (*Id.* ¶ 13—18.)  For example, Plaintiff alleges that in 2013 he requested his fibrosis levels be tested to determine the severity of his hepatitis C. (Amend. Compl. ¶ 13.)  Obaisi denied that request on the basis that Plaintiff was not eligible for such testing because he had no viral load. (*Id.* ¶ 14.)  Plaintiff challenges the merits of Obaisi's 2013 decision contending that it was baseless since it did not contain any reference to lab reports testing Plaintiff's viral load. (*Id.* ¶ 18.)  Plaintiff's allegations are about the medical attention he received, accordingly we narrow the lawsuit to the medical professionals involved in his treatment.  The scrutiny into the medical services Obaisi provided do not include action by the warden who merely reviewed Plaintiff's grievances, confirmed that he was seen by medical personnel, and denied those grievances. (*Id.* ¶¶ 13—18.)   Therefore, Pfister's motion to dismiss Plaintiff's Third Amended Complaint is granted with prejudice for failure to plead Pfister's personal involvement.

### B. Pfister and Deliberate Indifference

Although prison grievance procedures are not constitutionally mandated and do not automatically implicate the Due Process Clause, we nevertheless inquire into whether Pfister's alleged conduct was deliberately indifferent. *See Owens*, 635 F.3d at 953—54.  The fact that Pfister investigated Plaintiff's grievances by having reviewed Plaintiff's record and determined that Plaintiff had been seen by medical personnel undercuts Plaintiff's deliberate indifference allegations.  (Amend. Compl. ¶ 13—18.)  Rather, the pleadings suggest that Pfister confirmed that Plaintiff was seen by medical staff, the medical staff rendered medical judgment, and that

6

Pfister presumably rejected the grievance because Plaintiff did indeed receive medical attention. (*Id.*) Although these allegations raise questions as to the propriety of Obaisi's medical judgment,[4] we cannot say the same about Pfister's actions since his role was limited. For this reason, we grant Pfister's motion to dismiss with prejudice because the Third Amended Complaint shows on its face that Pfister did not act with deliberate indifference to Plaintiff.

## II.   Defendant Obaisi's Motion to Dismiss (Dkt. No. 98)

Obaisi moved to dismiss the official capacity claim against the estate under Rule 12(b)(6) before that stipulation was filed. (Dkt. No. 98.) The parties previously filed a stipulation for partial dismissal with prejudice as to the official capacity claims. (Dkt. No. 104.) According to that partial stipulation, the official capacity claims against Pfister and Obaisi are dismissed with prejudice. This stipulation moots Obaisi's motion to dismiss the official capacity claim against him. (*Id.*) Since Obaisi's motion to dismiss does not seek dismissal of the individual capacity claim against him, Obaisi's motion to dismiss is denied as moot. (*See, e.g.*, Obaisi Mem. (Dkt. No. 99) at 1("Obaisi . . . hereby move[s] to dismiss the official capacity claim against it in Plaintiff's [Third] Amended Complaint.") and at 2 ("Plaintiff's Official Capacity Claim Against Defendants Must Be Dismissed.").)

---

[4] For example, Obaisi based his decision on the potentially contradicted fact that Plaintiff had no hepatitis viral load in 2013 (Amend. Compl. ¶ 13) even though Plaintiff tested positive in 2005 and 2013. (*Id.* ¶ 11.)

7

## CONCLUSION

For the reasons stated above, Pfister's motion to dismiss is granted with prejudice and Obaisi's motion to dismiss is denied. Obaisi's Answer to the Third Amended Complaint is due within 21 days of this Order's entry. It is so ordered.

                                              Honorable Marvin E. Aspen
                                              United States District Judge

Dated: November 16, 2020
Chicago, Illinois